Kenneth P. Dobson
OSB No. 002435
Dobson Law Office LLC
324 S. Abernethy Street
Portland, OR 97239
(503) 684-8198
kdobson@pdxlandlaw.com

Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| Angela Arthur, *on behalf of herself and others similarly situated*,<br><br>      *Plaintiff*,<br>  v.<br><br>Oregon Community Credit Union,<br><br>      *Defendant*. | Case No.: 6:24-cv-01700-MC<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## Table of Contents

Introduction ............................................................................................................... 1

Summary of the Settlement ...................................................................................... 1

Claims Administration ............................................................................................. 2

Argument ................................................................................................................. 3

    I.   This Court's preliminary decision to certify the settlement class remains sound.............. 3

    II.  The settlement is fair, reasonable, and adequate, under Rule 23(e). ................................. 3

        A.   The strengths and weaknesses of Ms. Arthur's claims, together with the risk, expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status through trial, favor final approval. .................................................................. 4

        B.   The immediate and very significant cash relief afforded by the settlement favors final approval................................................................................................................................ 4

        C.   The posture of this case, and the experience and views of class counsel, favor final approval................................................................................................................................ 6

        D.   The reaction of settlement class members, and the lack objection from any government official, favor final approval. ................................................................................................ 8

        E.   The settlement treats settlement class members equitably. ........................................... 9

    III.  Distribution of settlement class notice more than satisfied due process requirements... 9

Conclusion .............................................................................................................. 10

## Table of Authorities

**CASES**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
    No. 3:16-CV-05486-JCS, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018)…………………10

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)………………………………………………….………..4

*Bayat v. Bank of the W.*,
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)………………….……10

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982)………………………………………...…………….4

*Bykov v. DC Transp. Servs., Inc.*,
    No. 2:18-CV-1691 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019)………..……….7, 8

*Cornelius v. Deere Credit Servs., Inc.*,
    No. 4:24-cv-25-RSB-CLR, ECF No. 33 (S.D. Ga. Jan. 28, 2025)……………...……….5

*Gabriel v. Nationwide Life Ins. Co.*,
    No. C09-0508-JCC, 2010 WL 11684280 (W.D. Wash. Aug. 9, 2010)……………………7

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)………………………………………………………5

*Hall v. Bank of Am., N.A.*,
    No. 12-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)……………..……………..8

*Hamilton v. SunTrust Mortg., Inc.*,
    No. 13–60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014)……………..………………9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)…………………...……………………………………3

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016)……………………….……………………..5

*Henderson v. Eaton*,
    No. CIV.A. 01-0138, 2002 WL 31415728 (E.D. La. Oct. 25, 2002)………………………5

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015)……………………………….……………………5

*In Re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003)……………………………..………………4

*James v. JPMorgan Chase Bank, N.A.*,
   No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)……………..……………8

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014)………………………..……………………………5

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017)……………………………….…………………………10

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)……………………..……………………………10

*Lee v. Ocwen Loan Servicing, LLC*,
   No. 14-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015)……...……………………8

*Markos v. Wells Fargo Bank, N.A.*,
   No. 15-1156, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)………..……………………6

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988)…………………………………………………..7

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)…………………………………………………..7, 8

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
   311 F.R.D. 688 (S.D. Fla. 2015)…………………………..……………………………6

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992)………………….……………………………7

*Rinky Dink Inc v. Elec. Merch. Sys. Inc.*,
   No. C13-1347 JCC, 2015 WL 11234156 (W.D. Wash. Dec. 11, 2015)……………………6

*Rose v. Bank of Am. Corp.*,
   Nos. 11-2390, 12-4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)………..…………5

*Schuchardt v. Law Office of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016)……………………………………………………..8

*St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*,
   No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013)……………..……………6

*Steinfeld v. Discover Fin. Servs.*,
    No. 12-1118, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014)………………………………5

*Wesley v. Snap Fin. LLC*,
    No. 2:20-cv-00148-RJS-JCB, ECF No. 128 (D. Utah Jan. 6, 2023)…………...……….5

*Wood v. Ionatron, Inc.*,
    No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009)……………..4

*Wright v. Nationstar Mortg. LLC*,
    No. 14-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)………………………………5

**RULES**

Fed. R. Civ. P. 23(e)…………………………………………..…………………………………3, 9

## Introduction

Months ago this Court preliminarily approved the parties' class action settlement in this matter. The Court-appointed claims administrator—Kroll, LLC ("Kroll")—then disseminated Court-approved class notice to potential settlement class members. After receiving notice of the settlement, 106 settlement class members submitted approved claims for their *pro rata* share of the settlement fund. Accordingly, after deducting from the settlement fund the cost of notice to potential settlement class members and claims administration, litigation costs and expenses subject to this Court's approval, reasonable attorneys' fees subject to this Court's approval, and an incentive award to Angela Arthur subject to this Court's approval, each approved claimant will receive just under $11,400. No settlement class member excluded himself or herself from the settlement, and no settlement class member objected to the settlement. Given as much, Ms. Arthur respectfully requests that this Court finally approve the settlement, and enter a final judgment and order. Oregon Community Credit Union ("OCCU") does not oppose Ms. Arthur's request.

## Summary of the Settlement

The settlement resolves this matter on behalf of the following settlement class:

> All persons throughout the United States (1) to whom Oregon Community Credit Union placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to an Oregon Community Credit Union member or accountholder, (3) in connection with which Oregon Community Credit Union used, or caused to be used, an artificial or prerecorded voice, (4) from October 8, 2020 through April 4, 2025.

To compensate settlement class members, OCCU created a non-reversionary settlement fund in the amount of $1,950,000. Paid from the settlement fund will be compensation to approved claimants, the cost of notice to potential settlement class members and claims administration, litigation costs and expenses subject to this Court's approval, reasonable attorneys' fees subject to this Court's approval, and an incentive award to Ms. Arthur subject to this Court's approval. Each

settlement class member who submitted an approved claim form is entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the costs, attorneys' fees, and incentive award. As well, any class member who wished to exclude himself or herself from the settlement was able to submit a request for exclusion, and any class member who wished to object to the settlement was able to submit an objection.

### Claims Administration

Kroll delivered notice of the settlement to potential settlement class members. The resulting claims, lack of exclusions, and lack of objections, demonstrate not only the effectiveness of the notice, but also settlement class members' satisfaction with the settlement.

*Direct Mail Notice*: Kroll caused postcard notices with detachable claim forms to be mailed to potential settlement class members that it identified, in part, by performing a reverse lookup process on telephone numbers OCCU provided to it. *See* Kroll Declaration, attached as Exhibit 1, ¶¶ 5, 9-12.

*Settlement Website*: Kroll established and maintains a dedicated settlement website—www.arthuroctcpasettlement.com—which includes information pertinent to settlement class members as well as answers to frequently asked questions. See *id.*, ¶ 6. Kroll made the settlement website live on October 23, 2025. *See id.*

*Toll-Free Hotline*: Kroll established and maintains a toll-free telephone number—(833) 630-8404—for settlement class members to obtain information about the settlement. *See id.*, ¶ 7. Kroll activated the toll-free telephone number on October 23, 2025. *See id.*.

*Claims*: 106 settlement class members submitted approved claims. *See id.*, ¶ 15.

*Objections*: Zero settlement class members objected to the settlement. *See id.*, ¶ 18.

*Exclusions*: Zero settlement class members excluded themselves from the settlement. *See id*.

*Class Action Fairness Act Notice*: OCCU, by way of Kroll, served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to the settlement. *See id*., ¶¶ 4, 18.

### Argument

**I.    This Court's preliminary decision to certify the settlement class remains sound.**

This Court previously found "that this action satisfies the applicable prerequisites for class action treatment under Rule 23[.]" ECF No. 22 at 2. Nothing has since changed to warrant a departure from this Court's reasoning.

**II.    The settlement is fair, reasonable, and adequate, under Rule 23(e).**

The Ninth Circuit identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representative and class counsel have adequately represented settlement class members, and that the settlement treats settlement class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

**A. The strengths and weaknesses of Ms. Arthur's claims, together with the risk, expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status through trial, favor final approval.**

"In the context of a class action, the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest." *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) (internal quotations marks omitted); *see also Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex"); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

Here, absent settlement, the parties would have had to continue with discovery, including multiple depositions; brief both class certification and merit-related issues; and try any issues not resolved on summary judgment. Appeals would almost certainly have followed. So given the considerable work already performed in this matter, and the work left to perform, the settlement is warranted. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

**B. The immediate and very significant cash relief afforded by the settlement favors final approval.**

The settlement here provides immediate and very significant cash relief to members of the settlement class, and avoids the certainty of additional, expensive, and protracted litigation. *See*

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *accord Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) (following discovery "several fundamental issues in the case remained in dispute: . . . . Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

Indeed, the settlement greatly exceeds, on a per-claimant recovery basis, other recently approved TCPA class action settlements. To be sure, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses subject to this Court's approval, reasonable attorneys' fees subject to this Court's approval, and an incentive award to Ms. Arthur subject to this Court's approval, approved claimants will receive just under $11,400 each. This far surpasses comparable figures in other approved TCPA class action settlements. *See, e.g., Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, ECF No. 33 (S.D. Ga. Jan. 28, 2025) ($3,900 per claimant); *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, ECF No. 128 (D. Utah Jan. 6, 2023) ($2,617 per claimant); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that

ultimately distributed less than $50 per claimant, *see* ECF No. 101).

To further put this in context, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the settlement provides settlement class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation.

## C. The posture of this case, and the experience and views of class counsel, favor final approval.

"A key inquiry is whether the parties had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc v. Elec. Merch. Sys. Inc.*, No. C13-1347 JCC, 2015 WL 11234156, at *5 (W.D. Wash. Dec. 11, 2015). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some

reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Moreover, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table[,] where the parties have sufficient information to make an informed decision about settlement." *Gabriel v. Nationwide Life Ins. Co.*, No. C09-0508-JCC, 2010 WL 11684280, at *3 (W.D. Wash. Aug. 9, 2010).

Here, the parties engaged in significant discovery, focused both on Ms. Arthur's individual claims and on those of absent settlement class members. The settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

As well, class counsel—who have substantial experience in litigating TCPA class actions—firmly believe the settlement is fair, reasonable, and adequate, and in the best interests of settlement class members. *See* ECF No. 23-1, ¶ 43. And "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[,] because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Additionally, the parties' arm's-length settlement negotiations through experienced counsel, with the assistance of a well-respected mediator, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Bykov v. DC Transp. Servs.,*

*Inc.*, No. 2:18-CV-1691 DB, 2019 WL 1430984, at *5 (E.D. Cal. Mar. 29, 2019) ("participation in mediation tends to support the conclusion that the settlement process was not collusive"); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("No indication appears that the settlement resulted from collusion. Rather, the parties settled with the assistance of court-appointed mediator[.]").

So given class counsel's "extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the" settlement. *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016).

**D. The reaction of settlement class members, and the lack objection from any government official, favor final approval.**

That no settlement class member excluded himself or herself from the settlement, that no settlement class member objected to the settlement, and that no government official objected to the settlement, strongly supports final approval of the settlement. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Schuchardt*, 314 F.R.D. at 686 ("The Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of

its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.*, No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement").

### E.  The settlement treats settlement class members equitably.

Rule 23(e)(2)(D) requires that this Court confirm the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, all settlement class members have the same claims. And the settlement provides that each approved claimant will receive an equal portion of the settlement fund. Additionally, the release affects each settlement class member in the same way.

### III.  Distribution of settlement class notice more than satisfied due process requirements.

This Court previously found that Ms. Arthur's proposed settlement class notice plan "meet[s] the requirements of Rule 23(c)(2)(B) and due process, constitute[s] the best notice practicable under the circumstances, and constitute[s] due and sufficient notice to all persons and entities entitled to the notice." ECF No. 22 at 10. It then directed Kroll to execute the proposed notice plan. *See id*. And following this Court's instruction, Kroll did just that. *See generally* Exhibit 1.

As a result, 106 settlement class members submitted approved claims.[1] This amounts to a claims rate of about 8.3% percent of directly noticed settlement class members, which strongly supports final approval of the settlement. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

## Conclusion

Ms. Arthur respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently.

Date: December 15, 2025

*/s/ Kenneth P. Dobson*
Kenneth P. Dobson
OSB No. 002435
Dobson Law Office LLC
324 S. Abernethy Street
Portland, OR 97239
(503) 684-8198
kdobson@pdxlandlaw.com

*/s/ Aaron D. Radbil*
Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500

---

[1]     The number of potential settlement class members originally estimated to be sent direct mail notice of the settlement was 2,691. Kroll subsequently excluded 1,414 of those 2,691 because they were determined to be members of Defendant (and thus not members of the settlement class). Kroll therefore ultimately sent direct mail notice of the settlement to 1,278 potential settlement class members. In response, Kroll received 106 approved claims.

Boca Raton, Florida 33431
(561) 826-5477
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the Class*